

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:

Opinion No. O-2257
Re: Whether or not the Texas Liquor
Control Board may promulgate,
adopt and enforce rules and
regulations governing the
advertisement of alcoholic
beverages by "billboard,"
"electric signs" and other out-
door advertising methods or
devices.

Your request for an opinion upon the above ques-
tion has been received and considered by this department.
We present your question in detail by quoting as follows
from your letter;

"The Texas Liquor Control Board is
hearing an increasing amount of criticism
concerning the wide use in Texas of small,
cheap tin beer signs which appear in such
great numbers on or about retail premises
in the cities and along the highways of
this State.

"It is impractical to curb this prac-
tice by voluntary agreement. The opinion
has been expressed to me that Section 6
(a) of Article I of the Texas Liquor Con-
trol Act provides the authority whereunder
the Texas Liquor Control Board might by
rule and regulation correct the situation.

"In order to have a basis for dis-
cussing certain legal aspects of the ques-
tion, I submit herewith the draft of a form

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Bert Ford, Page 2

of regulation representing substantially
the type of restrictions which I think
might be helpful.

"I would like very much to have your
opinion as to the Board's legal authority
to adopt this or similar regulation and
will appreciate a reply at your earliest
convenience."

At the outset it is advisable to state the general
principle that constitutes the foundation upon which any dis-
cussion of the powers of an executive administrative body
must be based. That is, such bodies are creatures of the
Legislature; therefore, in the exercise of their functions,
they are bound within the terms of that statutory authority
accorded them by their creating agency. Any deviation from
their delegated legislative function is normally subjected
to judicial correction. Consequently, if the Texas Liquor
Control Board has the power contended for herein, it must be
found in the statutory provisions creating that board and
defining its powers.

Section (a) of the Acts of the 44th Legislature,
1935, 2nd Called Session, p. 1795, ch. 467, Art. I, sec. 6;
Acts 1937, 45th Legislature, p. 1053, ch. 448, sec. 6 (Ver-
non's Annotated Penal Code, Article 666-6 (a)) provides that
the Board is:

"To supervise, inspect, and regulate
every phase of the business of manufactur-
ing, importation, exportation, transporta-
tion, storage, sale, distribution, posses-
sion for the purpose of sale, and possession
of all alcoholic beverages, including the
advertising and labeling thereof, in all
respects necessary to accomplish the purposes
of this Act. The Board is hereby vested with
power and authority to prescribe all necessary
rules and regulations to that end; to require
the filing of such reports and other data by
all persons engaged in any phase of the
alcoholic beverage business, which it may
deem necessary to accomplish the purposes of
this Act; to supervise and regulate all
licensees and permittees and their places of
business in all matters affecting the general
public, whether herein specifically mentioned

Honorable Bert Ford, Page 3

> or not, and to authorize its agents, servants,
> and employees under its direction to carry
> out the provisions hereof." (Underscoring
> ours)

Section (f) of the same Article provides that the Board is:

> "To require by rule and regulation
> that any liquor sold in this State shall
> conform in all respects to the advertised
> quality of such products; to promulgate
> rules and regulations governing labelling
> and advertising of all liquors in strict
> accordance with the labelling and adver-
> tising regulations of the Federal Alcohol
> Administration; to adopt and enforce a
> standard of quality, purity, and identity
> of all alcoholic beverages, and to pro-
> mulgate all such rules and regulations as
> shall be deemed necessary to fully safe-
> guard the public health and to insure
> sanitary conditions in the manufacturing,
> refining, blending, mixing, purifying,
> bottling, and rebottling of any alcoholic
> beverage and the sale thereof." (Under-
> scoring ours)

It is to be noted that whereas section (a) refers
to advertising in a very general manner, section (f) attempts
a more detailed and elaborate description of the rules and
regulations to be prescribed by the Board with respect to
the advertisement of alcoholic beverages. Further, we ob-
serve that section (f) uses such phrases as "advertised qual-
ity", "quality, purity, and identity", "safeguard the public
health."

In construing a statute, an ascertainment of the
law-makers' intent plays a primary and vital role. To accom-
plish this, the context of the statute must be construed as
a whole, and general words and provisions are to be consider-
ed in the light of more particular ones. Further:

> "Legislatures, like courts, must be
> considered as using expressions concern-
> ing the thing they have in hand; and it
> would not be a fair method of interpre-
> tation to apply their words to subjects

Honorable Bert Ford, Page 4

> not within their consideration, and which, if thought of, would have been more particularly and carefully disposed of."
> Sutherland on Statutory Construction, sections 234, 239 and 841.

It seems clear that the Legislature contemplated regulations other than that of the size, shape, character, or location of those various devices employed as a means of attracting the public to some certain dispensary or designed to focus the public's attention upon some particular brand or brands of alcoholic beverages. By passage of this act, they were attempting to provide a remedy for a conceivably greater evil which might arise; namely, the control and regulation of outward representations through advertisements of the quality, purity and identity of alcoholic beverages, thus designing to insure the consumer against being misled by misrepresentations through public advertisement. We so hold.

By reason of the foregoing, therefore, we respectfully advise you that it is our opinion that the Texas Liquor Control Board is not empowered under the present status of the law to promulgate, adopt and enforce rules and regulations governing the use of signs, billboards or other means of advertising alcoholic beverages unless such advertisement incorrectly and falsely represents the quality, purity or identity of an alcoholic beverage, or is of such a nature as might be deemed as detrimental to the public morals.

In conclusion, we wish to point out for your information that the following portion of your proposed rules and regulations is clearly unauthorized:

> "Any billboard or electric sign whenever and wherever displayed in a manner not authorized by this rule and regulation shall be considered illegal equipment and contraband and subject to seizure as provided in Section 30, Article I of the Texas Liquor Control Act." (See Article 666-30.)

Article 666-30, Vernon's Annotated Penal Code, applies only to "illegal equipment for manufacturing any alcoholic beverages", thus clearly rejecting any sign or billboard, used

Honorable Bart Ford, Page 5

for purposes of advertisement, from its defined category.

     Trusting that the above satisfactorily answers your inquiry, we remain,

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     _Wm. J. Fanning_

Wm. J. Fanning
Assistant

By     _Grundy Williams_

Grundy Williams

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN

OW:LW

APPROVED MAY 23, 1940

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS